(883 P.2d 1231)
No. 71,571

STATE OF KANSAS, *Appellant*, v. GERALD COLSTON, *Appellee*.

Opinion filed November 4, 1994.

*Michael A. Russell,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, for appellant.

*Gary J. Barnes,* of Kansas City, for appellee.

Before PIERRON, P.J., BRAZIL, J., and DAVID PRAGER, Chief Justice Retired, assigned.

BRAZIL, J.: In 1992, pursuant to a plea agreement, Gerald Colston pled no contest to two counts of aggravated incest with a child. He was originally sentenced to two to five years of imprisonment on each count. The sentences were to run consecutively for a controlling term of imprisonment of 4 to 10 years. His sentences were subsequently modified to run concurrently for a controlling term of two to five years of imprisonment.

Pursuant to K.S.A. 1993 Supp. 21-4724, the Department of Corrections (DOC) issued a report indicating that Colston's crimes were, for conversion eligibility purposes, severity level 5 offenses and that Colston was eligible for conversion. The State filed an objection to the DOC report, claiming Colston's crimes should be classified as severity level 2. The district court denied the State's motion, ruling that classification of Colston's convictions as level 2 offenses would be an impermissible enhancement of sentence. The State has appealed.

Colston's offenses took place between January 1, 1990, and February 12, 1991. He pled no contest to two counts of aggravated incest, K.S.A. 21-3603, in August of 1992. At the time of Colston's offenses, K.S.A. 21-3603 read in relevant part:

"(1) Aggravated incest is marriage to or engaging in any prohibited act enumerated in subsection (2) with a person who is under 18 years of age and who

is known to the offender to be related to the offender as any of the following biological, step or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew or niece.

"(2) The following are prohibited acts under subsection (1):

(a) Sexual intercourse, sodomy or any unlawful sex act, as defined by K.S.A. 21-3501 and amendments thereto; or

. . . .

"(3) Aggravated incest is a class D felony."

Pursuant to K.S.A. 1993 Supp. 21-3603, aggravated incest is now defined in relevant part as:

"(a) Aggravated incest is: (1) Marriage to a person who is under 18 years of age and who is known to the offender to be related to the offender as any of the following biological, step or adoptive relatives: Child . . . or

(2) engaging in: (A) Otherwise lawful sexual intercourse or sodomy as defined by K.S.A. 21-3501 and amendments thereto; or (B) any lewd fondling, as described in subsection (a)(1) of K.S.A. 21-3503 and amendments thereto, with a person who is 16 or more years of age but under 18 years of age and who is known to the offender to be related to the offender as any of the following biological, step or adoptive relatives: Child . . . .

"(b) Aggravated incest as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated incest as described in subsections (a)(1) and (a)(2)(B) is a severity level 7, person felony."

The State argues that Colston was convicted of engaging in an unlawful sexual act, oral copulation, with a person Colston knew to be his child and who was seven or eight years old. Pursuant to the 1993 version of K.S.A. 21-3603, Colston could not be convicted of aggravated incest, because aggravated incest only applies to unlawful acts with persons over 16 but under 18 years of age. Therefore, he would be guilty of aggravated criminal sodomy, K.S.A. 1993 Supp. 21-3506. K.S.A. 1993 Supp. 21-3506 reads in relevant part:

"(a) Aggravated criminal sodomy is:

(1) Sodomy with a child who is under 14 years of age;

(2) causing a child under 14 years of age to engage in sodomy with any person or an animal; . . .

. . . .

"(c) Aggravated criminal sodomy is a severity level 2, person felony."

K.S.A. 1993 Supp. 21-3501(2) defines sodomy as "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia."

The State argues that the DOC should have determined the severity level of Colston's crime as if the crime were committed on or after July 1, 1993, as the first step in determining if he was eligible for conversion. Because Colston could not have been convicted of aggravated incest for the instant crime because the victim was less than 16 years of age, the DOC should have determined which post-guidelines criminal statute fit Colston's act. Therefore, the State argues that the DOC should have looked to the charging instrument, plea transcript, trial transcript, or other documentation to determine what crime Colston could have been convicted of after July 1, 1993.

Colston counters that the trial court has the discretion to deny the State's challenge and, therefore, this issue is subject to the abuse of discretion standard. Further, Colston argues that reclassifying his crime as aggravated criminal sodomy would violate the prohibition against ex post facto laws. He claims that the effect of the State's request would be to impose a more severe punishment on him by denying him the retroactive application of the guidelines.

Contrary to Colston's argument, this is a question of statutory interpretation and thus a question of law. A trial court's interpretation of a statute is a question of law, and this court's scope of review is unlimited. *State v. Williams*, 18 Kan. App. 2d 424, 425, 856 P.2d 158 (1993). " 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.' " *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993) (quoting *West v. Collins*, 251 Kan. 657, Syl. ¶ 3, 840 P.2d 435 [1992]).

" 'In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested.' " *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994) (quoting *Brown v. Keill*, 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 [1978]).

" '[T]he legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to

reconcile the different provisions so as to make them consistent, harmonious, and sensible.' [Citation omitted.]" *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.' [Citation omitted.]" (Emphasis omitted.) *Todd v. Kelly*, 251 Kan. at 516.

K.S.A. 1993 Supp. 21-4724(c)(1) provides in part: "The department shall prepare a sentencing guidelines report on all such imprisoned inmates except those who have convictions for *crimes* which, if committed on or after July 1, 1993, would constitute a severity level 1, 2, 3 or 4 felony." (Emphasis added.)

Colston argues that he was convicted of two counts of the *crime* of aggravated incest and that after July 1, 1993, the *crime* of aggravated incest is a severity level 5 felony.

The State contends that the clear intent of the legislature was that the DOC should look to the criminal acts involved rather than the title or name of the offense to determine the crime involved and whether the inmate should be eligible for conversion.

In the instant case, the amended information reads in relevant part:

"Between January 1, 1990, and February 12, 1991, one Gerald Colston did unlawfully, willfully and feloniously engage in an unlawful sexual act, to-wit: Aggravated Criminal Sodomy, to-wit: oral copulation, in violation of K.S.A. 21-3506(b), with a person he knew to be his child, to-wit: [R.B.] (DOB: 10-9-83), who is under 18 years of age, in violation of K.S.A. 21-3603. (Aggravated Incest, 'D' Felony).

## "COUNT II

"At the County of Wyandotte, State of Kansas, for a further, different and second count herein; Information reads that between January 1, 1990, and February 12, 1991, one Gerald Colston did unlawfully, willfully and feloniously engage in an unlawful sexual act, to wit: Aggravated Criminal Sodomy, to-wit: oral copulation, in violation of K.S.A. 21-3506(b), with a person he knew to be his child, to-wit: [R.B.] (DOB: 10-9-83), who is under 18 years of age, in violation of K.S.A. 21-3603. (Aggravated Incest, 'D' Felony)."

Colston pled nolo contendere to both counts. Therefore, if the court or the DOC is to look to the acts alleged in the charging document as well as the journal entry of conviction to classify the crime as if committed after July 1, 1993, Colston's conviction fits the aggravated criminal sodomy statute.

In 1993, many of the sex crimes were re-codified and subdivided into different offense severity levels depending on the circumstances of the crime. Aggravated incest was one of the statutes re-codified.

The Kansas Attorney General and the Director of the Kansas Sentencing Commission apparently agree with the State in this case. In a memorandum opinion to county and district attorneys from the Attorney General and the Director of the Sentencing Commission dated July 2, 1993, they recognized the need to identify the criminal activity involved when classifying crimes under the Kansas Sentencing Guidelines Act (KSGA). They stated:

"The fact that many crimes have been redefined and subclassified under the new law will mean that you need to take a careful look at the manner in which the criminal activity for which the inmate has been convicted is now to be treated in terms of the statute violated and the crime severity level. Other sex offenses [in addition to indecent liberties, aggravated indecent liberties and rape previously mentioned in this memorandum], aggravated battery, and certain drug offenses are included among those crimes whose definition has changed and which are therefore deserving of careful attention as far as the proper severity level classification is concerned."

We agree with the State's argument and conclude that the legislative intent of K.S.A. 1993 Supp. 21-4724(c)(1) is to look to the criminal acts committed prior to July 1, 1993, for which the defendant was convicted and then determine what crime those acts would constitute after July 1, 1993, and the appropriate severity level.

In this case, Colston pled nolo contendere, was found guilty, and was convicted of acts described in the amended information which, at the time of his plea, constituted the elements of aggravated incest contrary to K.S.A. 21-3603, but which acts constitute the elements of aggravated criminal sodomy after July 1, 1993, contrary to K.S.A. 1993 Supp. 21-3506.

Colston argues that allowing the DOC or the sentencing court to reclassify his conviction as aggravated criminal sodomy would violate the constitutional prohibition against ex post facto laws.

"The United States Constitution prohibits the legislative enactment of any ex post facto law. U.S. Const., art. I, § 10. Two critical elements must be present for a criminal or penal law to be ex post facto: It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. A criminal law disadvantages the offender if it punishes an act not punishable when committed, imposes additional punishment to that then prescribed, aggravates the crime, or alters the legal rules of evidence." *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 8, 812 P.2d 761 (1991).

It is clear that the KSGA operates retrospectively. The critical issue in this case is whether the reclassification of Colston's offense pursuant to the guidelines would disadvantage him.

Obviously, Colston's act was punishable at the time committed. Also, reclassification of his crime does not impose additional punishment to that then prescribed. The guidelines specifically prohibit an enhancement of an offender's sentence through application of the guidelines. K.S.A. 1993 Supp. 21-4724(e). Next, neither party claims that allowing the DOC or the sentencing court to convert Colston's conviction, based on facts in the information, alters the legal rules of evidence. The only argument is that allowing a conviction of aggravated incest to be converted to aggravated criminal sodomy impermissibly aggravates the crime.

As a general rule, the criminal statutes and penalties in effect at the time of the commission of the offense control. *State v. Mayberry*, 248 Kan. 369, Syl. ¶ 15, 807 P.2d 86 (1991). The sentencing guidelines provide for limited retroactive application of guidelines sentences for certain classes of felons. *Chiles v. State*, 254 Kan. 888, 869 P.2d 707 (1994).

Colston's controlling sentence is two to five years. If converted to a guidelines sentence at severity level 5, his sentence would be 32 months. Counting his good time credits accrued as of the date of the DOC report, Colston would have been eligible for parole in July of 1994. If his conviction is converted to aggravated criminal sodomy, a severity level 2 crime, his guidelines sentence

would be 73 months. K.S.A. 1993 Supp. 21-4704. However, if deemed a severity level 2 crime, Colston is not be eligible to have his sentence converted to a guidelines sentence. K.S.A. 1993 Supp. 21-4724(c)(1).

The main flaw in Colston's argument is that he intimates that anything which denies him a shorter sentence necessarily aggravates the crime of his conviction and is, therefore, detrimental. In reality, the effect of conversion of his conviction, for retroactivity purposes, is to leave him in exactly the same position, neither better nor worse, than he was prior to the adoption of the guidelines. While he may not be eligible for a shorter sentence, neither is he required to serve one day longer than originally sentenced.

Colston cites two federal cases, *U.S. v. Mondaine,* 956 F.2d 939 (10th Cir. 1992), and *U.S. v. Underwood,* 938 F.2d 1086 (10th Cir. 1991), as support for his argument. However, neither of those cases are applicable because both address the situation where, at sentencing, the court failed to apply the substantive guidelines provisions that were in effect at the time the defendants committed their crimes. In both cases the 10th Circuit ruled that although the district courts are normally to apply the sentencing guidelines in effect at the time of sentencing rather than the guidelines in effect on the date of the offense, the ex post facto clause prohibits a retroactive application of a change in the guidelines if the change disadvantages the defendant. 956 F.2d at 942; 938 F.2d at 1090. Because Colston's crime was committed prior to the adoption of the KSGA and the revision of K.S.A. 21-3603 and because his crime is being converted for retroactive eligibility purposes only, there is no question that he is not being sentenced under a later, more severe version of a criminal law.

Although not raised by either party, we note that there is authority holding that by entering a plea of nolo contendere, Colston admitted all of the well-pleaded facts of the information for the purposes of the case. See *Lott v. United States,* 367 U.S. 421, 426, 6 L. Ed. 2d 940, 81 S. Ct. 1563 (1961); *Lill v. State,* 4 Kan. App. 2d 40, 42, 602 P.2d 129 (1979). Therefore, Colston admitted to each of the well-pleaded facts contained in both counts of the

information. It is logical to allow the DOC and the sentencing court to use these admissions to determine what crime Colston would have been guilty of after July 1, 1993, for the limited purpose of determining whether he is eligible for retroactive application of the guidelines. This is especially true when the legislature has subdivided the crime of conviction into several levels of crimes. This would carry out the legislative intent to keep more serious offenders incarcerated and allow early release of certain less serious offenders. Whether the crime is considered more or less serious is determined by the severity level contained in the revised criminal code.

K.S.A. 22-3209 reads in relevant part:

"(2) A plea of *nolo contendere* is a formal declaration that the defendant does not contest the charge. When a plea of *nolo contendere* is accepted by the court, a finding of guilty may be adjudged thereon. The plea cannot be used against the defendant as an admission in any other action based on the same act."

Using the nolo contendere plea for a guidelines retroactivity determination does not violate the statutory prohibition against use of the plea in other actions. Pursuant to K.S.A. 1993 Supp. 21-4724, the DOC reports, and any motions stating objections thereto, are to be submitted to the sentencing court in the original jurisdiction where the criminal case was filed. Because this retroactivity determination is in essence a continuation of the original case, there is no violation against the rule that a nolo contendere plea may not be used in any other action. Therefore, it was proper for the DOC and sentencing court to look to the well-pleaded facts of the information and to the journal entries to determine Colston's post-guidelines crime of conviction.

The district court judge in this case denied the State's motion, objecting to Colston's severity rating because it would have been an enhancement of Colston's sentence. K.S.A. 1993 Supp. 21-4724(e) reads, "If a sentence is converted as provided by this section, then all the rights and privileges accorded by the Kansas sentencing guidelines act shall be applicable. A person's sentence shall not be increased in length *through a conversion to one under sentencing guidelines.*" (Emphasis added.) However, if Colston's crime of conviction is, for guidelines purposes only, converted to

a severity level 2 crime, he would not be eligible for conversion and his sentence could not be increased. Therefore, converting Colston's conviction would not result in an increased sentence. Only if Colston was eligible for conversion and the guidelines sentence was greater than his original sentence would K.S.A. 1993 Supp. 21-4724(e) come into play.

Reversed and remanded with directions to find that Colston is not eligible for conversion.